PEARSON, MJ

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| WILLIAM J. PRICE, | ) | CASE NO. 1:08CV2770 |
| Petitioner, | ) | |
| v. | ) | JUDGE SARA LIOI |
| RICHARD GANSHEIMER, Warden | ) | MAGISTRATE JUDGE BENITA Y. PEARSON |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |

Before the Court, is the petition of William J. Price (also "Petitioner") seeking a writ of habeas corpus pursuant to Title 28 U.S.C. § 2254. ECF No. 1. This Report and Recommendation is written in response to that *pro se* petition.

Price is currently serving an aggregate sentence of nine years incarceration following his April 25, 2007, conviction pursuant to pleas of no contest to charges of aggravated vehicular homicide, aggravated vehicular assault, and driving while under the influence of alcohol.[1] ECF No. 11-2, Ex. 8.

In his federal habeas petition, Price raises grounds for relief challenging the State's machinery and procedures for the collection, handling, analyzing and documenting of blood samples used to determine his blood alcohol content. Respondent asserts that Price's grounds for relief have not been fairly presented to the State courts and must be dismissed. ECF No. 11.

For the reasons that follow, the undersigned Magistrate Judge recommends that each ground for relief be denied and that the petition be dismissed in its entirety.

---

[1] In addition to the charges stated above, the State charged Price with one count of involuntary manslaughter, an additional count of operating a vehicle while under the influence of alcohol, and one count of failure to operate a motor vehicle in a lane of travel; those charges were dismissed as part of a negotiated plea.

(1:08CV2770)

## I. Factual and Procedural Background

The State appellate court's factual findings shall be presumed correct. 28 U.S.C. § 2254(e)(1); *see Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001) A petitioner has the burden of rebutting the presumption of correctness by clear and convincing evidence. *Id*. The Geauga County Court of Appeals, Eleventh Appellate District, established the following facts, in pertinent part:

> At 2:47 p.m., on August 13, 2006, Price was involved in an automobile accident in which the SUV he was driving struck a motorcycle driven by Raymond Long. Long was killed instantly; his girlfriend, Patricia Morgan, suffered extensive and permanent injuries; Price himself was also severely injured.
>
> Trooper James Smith of the Ohio State Highway Patrol, who was working the 3:00 to 11:00 p.m. shift that day, was en route from his home to the Chardon Patrol Post when he was dispatched to the accident scene. Upon arrival, Smith was met by Sergeant Biskup of the State Highway Patrol, who had also been called to the scene. Trooper Smith observed Price sitting on a guardrail where emergency personnel were attending to his injuries. While questioning Price prior to his transport to Geauga Hospital, Trooper Smith began to suspect that Price might be intoxicated, due to his unresponsiveness, his glassy, bloodshot eyes, and slurred speech. During the course of the accident investigation, it was discovered that Price had three bottles of vodka in his vehicle. Based upon these findings, Trooper Smith and Sergeant Biskup determined that Price should be tested for intoxication.
>
> Trooper Smith followed the rescue vehicle carrying Price to Geauga Hospital, stopping at his patrol post briefly to pick up two blood sampling kits, since his patrol vehicle was only carrying one at the time and State Highway Patrol regulations required each vehicle to be equipped with two kits per shift. Smith arrived at the hospital at approximately 3:29 p.m., at which time he informed Price he was under arrest, and read Price his rights, as outlined in Ohio BMV form 2255, which was required procedure prior to requesting a blood specimen. After having acknowledged his rights, Price consented to having blood drawn. At approximately 3:35 p.m., Nurse Roberta Hammonds drew a sample of Price's blood using the State Highway Patrol's standard specimen kit.
>
> Trooper Smith subsequently took custody of the sample and returned to the accident scene to investigate further. During this time, the sample remained in his patrol vehicle. According to Smith's testimony, the sample remained in his custody until he was finally able to mail it to the Ohio State Patrol Crime Lab at approximately 10:00 p.m., on August 13, 2006. In contrast, the property control form filled out and mailed by Smith along with Price's blood sample

(1:08CV2770)

>indicated that the time of the mailing, which is presumed to be when a transfer in the chain of custody occurs, was listed as 3:50 p.m., on that date. The specimen arrived at the crime lab on August 21, 2006, eight days later. Criminalist Jeffrey Turnau tested the sample on that date, and determined that Price's blood alcohol level was .244.

ECF No. 11-2, Ex. 15.

In his timely filed direct appeal, Price raised the following assignments of error:

> I. The trial court erred in overruling Appellant's motion to suppress the results of Appellant's blood alcohol test where the evidence failed to establish substantial compliance with the rules established by the Ohio Department of Health.
>
> II. The trial court erred in imposing consecutive sentences and imposed a sentence that is contrary to the consistency and proportionality guidelines of R.C. 2929.11(B).
>
> III. The trial court erred in sentencing Appellant to a harsher sentence for exercising his Fifth Amendment right against self-incrimination.

ECF No. 11-2, Ex. 11. Price was granted leave to supplement his assignments of error to include the following:

> IV. The trial court erred to the prejudice of the Appellant when it ordered fines and costs without consideration of his ability to pay the financial sanctions.

ECF No. 11-2, Exs. 12,13. On March 17, 2008, the appellate court affirmed Price's convictions.

ECF No. 11-2, Ex.15.

Price timely appealed that ruling to the Supreme Court of Ohio, alleging the following propositions of law:

> Proposition of Law No. I: A court of appeals deprives a defendant of due process when it sua sponte avails the State of an issue the State waived in the trial court and on appeal and then the appellate court eliminates the State's burden of substantial compliance with the Ohio Administrative Code provision 3701-54-04(E) at the suppression hearing.
>
> Proposition of Law No. II: The overall goal of the alcohol testing procedures set forth in 3701-53-01 et seq. of the Ohio Administrative Code is to ensure the accuracy and reliability of alcohol testing results. Failure to provide any evidence of substantial compliance with 3701-53-01(A) and (B), 3701-53-04(E) and 3701-53-06(C) and (D) precludes a finding of substantial compliance.
>
> Proposition of Law No. III: A trial court is required to apply the

(1:08CV2770)

>consistency principles found in R.C. 2929.11 since according to the ruling in *State v. Foster* (2006) 109 Ohio St.3d 1 (finding that the obligation in R.C. 2929 is not eliminated) did not eliminate that obligation.

ECF No. 11-2, Ex. 17. On August 6, 2008, the Supreme Court of Ohio denied Price's leave to appeal and dismissed the appeal as not involving any substantial constitutional question. ECF No. 11-2, Ex. 19. No further appeal was taken.

On November 24, 2008, Price filed the instant petition for a writ of habeas corpus alleging the following grounds for relief [2]:

A. Ground One: Petitioner was denied due process and equal protection under the law when the Director of Health for Ohio deviates from its statutory mandate of substantial compliance expressed in O.A.C. 3701-53-01 et seq., by failing to produce the required operating manuals, maintenance and repair records and further admits speculative testimony from a lab technician that model 8410 and model 8500 are substantially the same testing devices.

B. Ground Two: Petitioner was denied due process and equal protection under the law when the court usurped the statutory duties imposed by the legislature upon the Director of Health to substantially comply with O.A.C. 3701-53-01 et seq., with respect to the collecting, handling, analyzing and documenting blood samples for B.A.C. test purposes.

C. Ground Three: Petitioner was denied due process and equal protection under the law when the court usurped the statutory duties imposed by the legislature upon the Director of Health to substantially comply with O.A.C. 3701-53-01 et seq., when it irrefutably concluded that the latter met its statutory burden simply by proffering that the blood sample vials by having gray caps contained the requisite amounts of anti-coagulant (potassium oxalate) and preservative (sodium fluoride) necessary to maintain the integrity of blood samples for B.A.C. testing purposes.

D. Dground Four: Petitioner was denied due process and equal protection under the law when the court without evidence and without

---

[2] Price attempted to amend or supplement his petition to include an additional ground for relief attacking the sentences imposed by the State court. ECF No. 14-1 at 1. The undersigned denied his motion, holding that the proposed ground had not been fairly presented to the State courts and would not be cognizable in federal habeas corpus proceedings because it was premised on alleged violations of State law for which relief in a federal habeas corpus proceeding is not available. ECF No. 17. Judge Lioi overruled Price's objection to that ruling. ECF No. 20.

4

(1:08CV2770)

> any basis of fact or law irrefutably concluded that two separate and distinct models of a gas chromagraphic machine, a model 8410 and a model 8500, were virtually identical when evidence was introduced that demonstrated that each model was contained unique components differing from the other were equipped with different features and different software components. An evidentiary hearing is respectfully requested by petitioner wherein he can conclusively demonstrates that the model 8410 and model 8500 are not identical devices.

ECF No. 1-1.

## II. Discussion

To permit federal judicial resources to focus on only the most compelling cases, a petitioner must successfully pass through several procedural gateways to qualify for federal review. Relevant gateways and their application to the instant petition are provided below.

### A. Jurisdiction

Writs of habeas corpus may be granted by a district court within its respective jurisdiction:

> Where an application for a writ of habeas corpus is made by a person in custody under the judgment and sentence of a State court of a State that contains two or more Federal judicial districts, the application may be filed in the district court for the district within which that the State court was held which convicted and sentenced him and each of such district courts shall have concurrent jurisdiction to entertain the application.

28 U.S.C. § 2241(d).

Price was convicted in the Court of Common Pleas, Geauga County, Ohio within the Northern District of Ohio and remains incarcerated.[3] The Court, therefore, has jurisdiction over Price's petition for a writ of habeas corpus.

### B. Statute of Limitations

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year statute of limitations period for federal habeas petitions filed by prisoners challenging state-court convictions after its April 24, 1996 effective date. 28 U.S.C. § 2244(d); *McCray v.*

---

[3] *See* http://www.drc.ohio.gov/ (website of the Ohio Department of Rehabilitation and Correction for current status of and basis for Price's incarceration).

(1:08CV2770)

*Vasbinder,* 499 F.3d 568, 571 (6th Cir.2007). The provisions of the AEDPA are controlling herein as the instant petition was filed after the Act's effective date. *Lindh v. Murphy*, 521 U.S. 320, 322 (1997). In this case, the statute began to run on the date judgment became final. 28 U.S.C. § 2244(d)(1); *Jimenez v. Quarterman*, 129 S.Ct. 681, 685-86 (2009).

Price's petition was timely filed in accordance with 28 U.S.C. §2244(d).

### C. Procedural Default

In the instant case, the Respondent asserts that Price's grounds for relief have been procedurally defaulted by reason of his failure to present them to the State courts as violations of federal constitutional law. In disagreement, Price argues that he appropriately presented his claims for relief to the State courts.

A petitioner must have availed himself of all accessible State remedies, through a motion or petition for review by the State's highest court. *Granberry v. Greer*, 481 U.S. 129, 133 (1987). A petitioner must "fairly present" each federal constitutional claim to the State courts before seeking relief in federal court. *Baldwin v. Reese*, 541 U.S. 27 (2004); *Hannah v. Conley,* 49 F.3d 1193, 1196 (6th Cir. 1995). In so doing, State courts are afforded "one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

Fair presentation of the factual and legal basis regarding a federal constitutional issue may be made to State courts in four ways:

> (1) reliance upon federal cases employing constitutional analysis;
> (2) reliance upon state cases employing federal constitutional analysis;
> (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or
> (4) alleging facts well within the mainstream of constitutional law.

*McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000), citing *Franklin v. Rose*, 811 F.2d 322, 326 (6th Cir. 1987), *cert. denied*, 532 U.S. 958 (2001). Accord *Whiting v. Burt*, 395 F.3d 602, 613 (6th Cir. 2005); *Blackmon v. Booker*, 394 F.3d 399, 400 (6th Cir. 2004). For purposes of determining whether a petitioner exhausted State remedies, a claim later presented in a habeas corpus petition must, when earlier presented to the State court, have included reference to a

6

(1:08CV2770)

specific federal constitutional guarantee as well as a statement of the facts entitling petitioner to relief. *Picard v. Connor*, 404 U.S. 270, 271 (1971). Merely "mak[ing] a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of such a claim to a [S]tate court[,]" does not sufficiently apprise the State court of a specific federal constitutional guarantee necessary to exhaust the claim. *Gray v. Netherland*, 518 U.S. 152, 162-63 (1996) (citing *Picard v. Connor*, 404 U.S. 270, 271 (1971) and *Anderson v. Harless*, 459 U.S. 4, 7 (1982)). *Accord*, *Blackmon*, 394 F.3d at 401 ("To escape procedural default, claims that the rights to due process and to a fair trial have been violated must of themselves be fairly presented, rather than functioning as catchall language appearing within the presentation of other non-constitutional arguments."). Also, it is also not enough to present the just facts giving rise to the federal claim raised in habeas corpus; a petitioner must present the same facts and legal theory to the State courts as is presented to the federal courts in order to preserve the claim. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). Additionally, a related but distinct claim is defaulted unless first presented in State court. *Lott v. Coyle*, 261 F.3d 594, 607, 618-19 (6th Cir. 2001).

If a petitioner fails to fairly present both the factual and legal basis for a federal constitutional issue and would be barred from pursuing relief on that claim in State courts, that claim when later presented in a federal habeas corpus petition should not be denied for failure to exhaust, because there would then be no available State remedies. *Hannah v. Conley*, 49 F.3d 1193, 1195-96 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). That, however, still leaves the claim subject to dismissal for procedural default. To avoid dismissal for procedural default, the petitioner must demonstrate cause and prejudice for failure to have fairly presented the claim to the State court. *Gray v. Netherland*, 518 U.S. at 162; *Coleman v. Thompson*, 501 U.S. 722, 750-51(1991); *Deitz v. Money*, 391 F.3d 804, 808 (6th Cir. 2004). A petitioner can also excuse the procedural default by demonstrating that a failure to consider a claim will result in a fundamental miscarriage of justice. This generally requires a claim of actual innocence. *See Rust v. Zent*, 17 F.3d 155, 159-60 (6th Cir. 1994)

Price did not "fairly present" his claims to the State Court in order to preserve federal

(1:08CV2770)

habeas review. In presenting to the State courts the issues now contained in the grounds for relief before this federal court, Price argued them purely as matters of state law. He cited State cases without employing federal constitutional law or analysis. Price's references to "due process" and "equal protection" in his brief before the Supreme Court of Ohio fail to transform arguments premised entirely on State law to ones alleging a denial of a specific constitutional guarantee.

Price has procedurally defaulted on each of his grounds for relief. Under a longstanding Ohio procedural rule, a claim that could have been but was not raised on direct appeal is barred from being raised in a delayed appeal or in a petition for post-conviction relief. *See Collins v. Perini*, 594 F.2d 592, 593 (6th Cir. 1978). As explained above, Price was required to "fairly present" each federal constitutional claim to the State courts during the direct appeal process as each of his claims rely on matters that are readily apparent from the face of the record. Pursuant to Ohio law, Price is now precluded from fairly presenting his claims to the Ohio State courts. *See Rahe v.Jackson*, 2010 U.S. Dist. Lexis 96364 (Ohio S.D. 2010) (finding that because the claims rely on facts that were readily apparent from the face of the record and should have been raised on direct appeal, petitioner is barred by the state of Ohio's doctrine of *res judicata*). Accordingly, because Price has failed to "fairly present" his claims to the State courts and is barred from presenting those issues, he has procedurally defaulted on each of his claims. To avoid dismissal, he must excuse his procedural default by establishing cause and prejudice or showing that dismissal would result in a fundamental miscarriage of justice.

Price has not overcome the burdens required to excuse his procedural default. His proffered evidence of cause is unavailing.[4] Price unsuccessfully argues cause due to actual innocence. He attempts to tie this argument to his rejected supplemental ground for relief in which he sought to argue that his "conviction and sentence is factually and fatally flawed based

---

[4] Having found that the Price failed to establish "cause" eliminates the need to address the lack of prejudice, given that a showing of both is required.

(1:08CV2770)

on improper sentence and punishment." ECF No. 14. The rejection of that supplemental ground for relief (as not cognizable in a federal habeas proceeding) significantly undermines Price's establishment of cause. Price's assertion of actual innocence, is unpersuasive because it lacks any new reliable evidence to support the declaration. *See Schlup v. Delo*, 513 U.S. 298, 324 (1995) (stating that "without any new evidence of innocence, even the existence of a conceitedly meritorious constitutional violation is not in itself sufficient to establish a miscarriage of justice that would allow a habeas court to reach the merits of the bar claim"). In addition, a claim of actual innocence is inconsistent with Price's pleas of no contest. Absent a convincing showing of cause and prejudice, or a demonstration of actual innocence, Price's grounds for relief should be denied.

### D. Merits Review

Apart from being procedurally defaulted, Price's grounds for relief also fail on the merits.[5] The role of a federal district court in a habeas corpus proceeding is set forth in Title 28 U.S.C. § 2254 (d) which provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to *any claim that was adjudicated on the merits in State court proceedings* unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

---

[5] In the interest of fairness, rather than address whether Price's grounds for relief are subject to dismissal due to the procedural frailty of non-cognizability or appropriateness for a federal habeas proceeding, the Court reviews Price's grounds for relief substantively, *i.e.* on the merits.

9

(1:08CV2770)

(emphasis added.)

Moreover, it is the obligation of the Court to accept as valid a State court's interpretation of the statutes and rules of practice of that State, including State sentencing laws. *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991). "Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding." *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001) (Internal quotations and citations omitted.).

The State courts substantially addressed the issues encompassed in the grounds for relief raised by Price in the instant petition as matters of State law and affirmed his convictions, holding in pertinent part[6]:

> In any prosecution premised upon a violation of R.C. 4511.19, the result of a blood alcohol test is presumed valid unless the defendant first challenges the validity "by way of a pretrial motion to suppress." *Burnside*, 2003-Ohio-5372, at ¶24. Failure to file such a motion "waives the requirement on the state to lay a foundation for the admissibility of the test results." Id., quoting *State v. French*, 72 Ohio St.3d 446, 451, 1995-Ohio-32. However, if the defendant challenges the validity of the test results by means of a pretrial suppression motion, the burden shifts to the state "to show that the test was administered in substantial compliance with the regulations prescribed by the Director of Health." Id. If the state satisfies this burden and creates a presumption of admissibility, "the burden then shifts to the defendant to rebut that presumption by demonstrating that he was prejudiced by anything less than strict compliance." Id., citing *State v. Brown* (1996), 109 Ohio App.3d 629, 632.
>
> Price first asserts that the results of his blood tests were not admissible and should have been suppressed, since the state failed to

---

[6] This third paragraph of this quotation touches upon but does not explicitly address the entirety of Price's fourth ground for relief wherein Price alleges that *violations of due process and equal protection occurred* when the State court erroneously concluded that two models of a gas chromographic machine were virtually identical and relied upon one set of manuals for both. Because the fourth ground for relief, like the other three, at its essence challenges a State court ruling while merely mentioning "due process" and "equal protection," that alleged constitutional violation was not fairly presented to the State court during the direct appeal process and is now procedurally defaulted. ECF No. 11 at 10. Price's request for an evidentiary hearing in that ground for relief is addressed below.

10

(1:08CV2770)

>prove it complied with Ohio Adm.Code 3701-53-01(B), and 3701-53-06(C) and (D), when his blood sample was tested. These rules require that a written procedural manual containing the analytical techniques used in testing for the presence of alcohol or drugs in bodily substances be kept on file in the area where such tests are performed, and that the manual be maintained and updated in a specified fashion. Price specifically argues that the state failed to prove that (1) the test manual was on file in the lab where the test was performed, and (2) that the onsite manual applied to a different model of gas chromatograph than that which was used to test his blood sample.
>
>At the hearing on Price's motion to suppress, Criminalist Jeff Turnau testified on behalf of the state. Turnau testified that he performed the test on Price's blood sample using a Perkin-Elmer Model 8500 gas chromatograph. Despite Price's assertion that the onsite manual did not comply because it referenced the Perkin-Elmer Model 8410 gas chromatograph, Turnau testified the same manual is used for all Perkin-Elmer 8000 series machines, and is kept on a shelf near the bench where he performs the blood tests. Based upon this testimony, the state provided sufficient evidence of substantial compliance with ODH regulations. Price's first argument lacks merit.
>
>Price next challenges whether the state complied with the provisions of Ohio Adm.Code 3701-53-01(A) and 3701-53-04(E), which require the results of instrument checks, calibration checks, and maintenance of the equipment used for the testing of blood samples be kept for a period of not less than three years. We reject this argument.
>
>At the hearing, Turnau was able to testify about instrument and calibration checks and records associated with each, he was unable to testify from personal knowledge with regard to maintenance records. "The failure of the state to adduce any evidence as to compliance with the recordkeeping requirement" as mandated by the Director of Health, may be grounds for granting a motion to suppress. *State v. Lipsky*, 1st Dist. No. C-010473, 2002-Ohio-1141, 2002 Ohio App. LEXIS 1159, at *5. However, it is well-settled that "[a] motion to suppress must state its legal and factual bases with sufficient particularity to place the prosecutor and the court on notice of the issues to be decided." *State v. Nicholson*, 12th Dist. No. CA2003-10-106, 2004-Ohio-6666, at ¶9, citing *State v. Shindler*, 70 Ohio St.3d 54, 58, 1994-Ohio-452; accord *State v. Barnett*, 11[th] Dist No. 2006-P-0017, 2007-Ohio-4954, at ¶28 ("[A]n accused's failure to provide any specificity in his motion to suppress relieve[s] the state of the duty to specifically address the litany of regulatory violations"asserted in the motion.); *State v. Embry*, 12th Dist. No. CA2003-11-110, 2004-Ohio-6324, at ¶24 ("If a criminal defendant wishes to increase the burden on the prosecution to something beyond merely responding in general, the issues raised must have some specific factual basis to support them.").
>
>In the instant case, a review of Price's motion to suppress reveals that he not only failed to raise the issue of a failure to comply with Ohio Adm.Code 3701-53-01(A) and 3701-53-04(E) with any degree of

11

(1:08CV2770)

> specificity; he failed to raise this issue *at all*. Price's argument that the state failed to demonstrate substantial compliance with these particular Administrative Code regulations is, therefore, without merit.
>
> Price next challenges whether the state substantially complied with Ohio Adm.Code 3701-53-05, which requires all blood and urine samples to be refrigerated "[w]hile not in transit or under examination." Ohio Adm.Code 3701-53-05(F). With regard to this section, Price points to Trooper Smith's testimony, in which he admitted to not mailing the sample until after 10:00 p.m. on August 13, 2006, over six hours after the time indicated on the property control form and to the fact that it took his specimen approximately eight days from the time it was mailed to arrive at the crime lab. Price also challenges whether the state substantially complied with Ohio Admin. Code 3701-53-05(C), which requires the sample vial used to collect blood samples contain "solid anticoagulant," or whether the vial contained a preservative to prevent degeneration of blood specimens while unrefrigerated.
>
> With regard to the question of whether an anticoagulant or chemical preservative was present in the vacuum tube containing Price's blood sample, the state elicited testimony from Turnau, who stated that the tube containing Price's sample had a grey cap, which indicates the tube in question contained both potassium oxalate, an anticoagulant, and sodium fluoride, a preservative. Both Douglas Rohde, Senor Forensic Chemist for the Lake County Crime Lab, who testified on behalf of the state, and Robert Williams, Price's own expert, corroborated Turnau's testimony in this regard. Williams further testified that it would not be routine for a laboratory to test for the presence of these substances if the top of the vial in question was grey. Consequently, Price's argument that the state did not substantially comply with these requirements must fail.
>
> With regard to the second issue of non-refrigeration, we note that while non-refrigeration for the six hour period of time between when the sample was taken from Price and the time it was actually mailed does raise some concerns, the Fifth Appellate District has noted, "the issue is the reliability of the test results not the performance requirements of the Ohio Administrative Code." *State v. Brush*, 5th Dist. No. 04CA92, 2005-Ohio-3767, at ¶24 (citation omitted). Rohde's testimony indicated that, due to the presence of the preservative in the blood sample, the lack of refrigeration would not affect the reliability of the test results, even if bacteria were present in the blood. Furthermore, the Ohio Supreme Court, in *State v. Plummer* (1986), 22 Ohio St.3d 292, found no violation of Ohio Adm. Code 3701-53-05(F) when a urine specimen went unrefrigerated for a period of one hour and twenty-five minutes prior to mailing, and again went unrefrigerated for a period of three to four hours after the specimen had been delivered to the laboratory. Id. at 294-295. Consequently, we cannot conclude that Trooper Smith's retention of the blood specimen in an unrefrigerated state for six hours before mailing was a violation. "[W]ere we to agree *** that any deviation whatsoever from the regulation rendered the results of a [test] inadmissible, we would be

12

(1:08CV2770)

> ignoring the act that strict compliance is not always realistically or humanly possible." *Burnside*, 2003-Ohio-5372, at ¶34(citation omitted).
>
> Nor do we conclude that an eight-day period required for the mailing of the specimen in this case was unreasonable. Turnau testified that such delays are not uncommon, and may range as high as 10 to 12 days. Furthermore, while in the U.S. mail, the specimen is clearly "in transit," within the contemplation of Ohio Admin.Code 3701-53-05(F), and thus, did not require refrigeration for that period.

(footnote omitted.) ECF No. 11-2, Ex. 15.

Ultimately, the State court concluded that there was not sufficient evidence to support Price's contentions that the prosecution had failed to follow State regulations in analyzing his blood sample to determine its alcohol content. As a result, Price's convictions were affirmed.

Upon review of the record, the Court finds the State court's determination accords with § 2254(d)(2). The State appellate court's decision affirming Price's convictions was based upon a reasonable determination of the facts in light of the evidence presented in State court proceedings. The State Court relied upon evidence in the record, including testimony, and relevant State law. Because the State appellate court's decision was not unreasonable, the undesigned recommends dismissing each of Price's grounds for relief and denying his petition for a writ of habeas corpus, pursuant to Title 28 U.S.C. § 2254 (d)(2).

### E. Request for Evidentiary Hearing

The habeas corpus statute authorizes an evidentiary hearing in limited circumstances when the factual basis of a claim has not been adequately developed in State court proceedings. 28 U.S.C. § 2254(e)(2).

Because Price's grounds for relief involve legal issues that can be resolved without additional factual inquiry, there is no need for an evidentiary hearing as requested in Price's fourth ground for relief.

### III. Conclusion and Recommendation

For the foregoing reasons, the undersigned Magistrate Judge recommends dismissing the petition of William J. Price for a writ of habeas corpus in its entirety without further proceedings

13

(1:08CV2770)

and with prejudice. The undersigned also finds Price's request for an evidentiary hearing unnecessary, and as a practical matter moot.

November 24, 2010  
Date

s/ *Benita Y. Pearson*  
United States Magistrate Judge

## **OBJECTIONS**

Objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order. *See, United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see also* Thomas v. Arn, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).